OPINION
{¶ 1} Defendant-appellant Desmond Holmes appeals from his conviction and sentence on one count of abduction, in violation of R.C. 2905.02(A)(1). The plaintiffappellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 29, 2003, Desmond Holmes [hereinafter appellant] was arrested and charged with one count of kidnapping and one count of felony domestic violence. Subsequently, appellant was indicted by the Stark County Grand Jury on a single count of abduction, in violation of R.C.2905.02(A)(1). Thus, appellant was not indicted on the count of domestic violence.
 {¶ 3} On March 23, 2004, appellant filed a motion in limine seeking to exclude testimony concerning his prior criminal record and any active warrants which were pending at the time of this incident. The trial court granted the motion.
 {¶ 4} A jury trial was held on March 24 and 25, 2004. The alleged victim was 14 years of age. At trial, the minor victim testified to the following. On December 22, 2003, at about 8:30 P.M., she was returning a red Santa hat to a friend's house. No one was home at her friend's house. As she stood on the steps of the friend's home, about to walk away, appellant, age 24, grabbed her and pushed her into a car. Appellant stated "we are going for a ride."
 {¶ 5} The minor did not know appellant and had never seen him before. She testified that she was scared and shocked to find herself in the car and, thus, did not immediately attempt to escape. Appellant drove to a local beverage store. Appellant parked the car in front of the store and went inside. The victim claimed that while appellant was in the store buying alcohol, she felt that she could not escape because she did not know where she was or where she could go and was afraid that if he caught her again, "it could be worse." Transcript of Proceedings, Vol. II, pg. 108.
 {¶ 6} When appellant returned to the car, he opened a container of beer and told the minor victim to drink some. She testified that she drank only a sip. Appellant then stated that they were going to his cousin's house. They drove until they stopped at a house but the victim was not sure of the location of the house. Once again, although appellant got out of the car and entered the house leaving the victim alone in the car, the victim did not attempt to escape. At trial, she claimed that she did not run because she did not know where she was. While appellant was inside the house, she poured the beer out of the car window.
 {¶ 7} According to the alleged victim, appellant came out of the house and got back into the car. Appellant then drove the two of them to Hartville. At this point, the victim told appellant that she wanted to go home, but she received no response. She testified that appellant subsequently made various sexual comments to her indicating his "sexual intent." Specifically, appellant said that he wanted to have sex with her and talked about the size of his penis. At some point during the journey, a cigarette rolled onto the floor of the car and appellant told the victim to retrieve it. When she looked for the cigarette, she found a pair of scissors under the seat. She slipped the scissors into her shirt sleeve to use to protect herself.
 {¶ 8} The two eventually reached Portage County. The victim testified that it was then that appellant asked her, "well, what if I were to kill you right now?" At that point, she felt she had nothing to lose, and hit the steering wheel as the car slowed. This caused the car to fishtail a little and she jumped out. She testified that she proceeded to run along side of the road, with appellant driving along side her. Appellant told her that she had better get back in the car or she would walk home. In addition, appellant told the victim that he wanted to have sex with her. The victim told appellant that she would rather walk. Appellant drove off but not before he told the victim that he would find her. The victim memorized appellant's license plate and then ran and hid behind a truck. As she did so, she threw down the scissors. The victim waited a few minutes and then approached a house. The house was the home of Karen Young.
 {¶ 9} The victim knocked on the door and told Young what had happened. Young called the Portage County Sheriff's Department and urged the victim to write out a description of the person and the car in which she had been abducted. After the victim made contact with her family, she was treated at a hospital for a "jammed leg" which she suffered when she jumped from the moving car.
 {¶ 10} The victim was then subjected to cross examination. The cross examination was premised upon the defense theory that the victim willingly got into the car and made up the abduction story to cover for staying out past curfew. The victim admitted that her curfew was 10:00 P.M. and that her mother got very upset if she missed curfew, to the extent that she had been grounded for several months for one infraction. The victim agreed that she would have been in a lot of trouble if she had called her mother after 10:00 P.M. from Portage County and after being dropped off by an older man. The victim also concurred that while at the beverage store, she could see two customers in line inside the store and one other car in the parking lot.
 {¶ 11} However, during cross examination, the victim presented additional incriminating testimony. The victim stated that she told appellant that she was 14 years old while they were in the car. She further testified that she did not give appellant her correct home telephone number in the car when he asked for it after he had threatened her life. The victim also alleged that appellant had fondled her breast while they were in the car.
 {¶ 12} Karen Young also testified at trial. Young testified to the following. The victim appeared on her door step around 11:00 P.M., crying and upset. The victim told Young that she had been abducted. The victim said that she did not know where she was and that the incident had started in Canton when she was forced into the car. The victim also told Young that she and the abductor made two stops, one at a store and one at a relative's house. Young provided the victim with pen and paper to write down all of the details she could remember to assist the police.
 {¶ 13} Deputy Heath Wilson of the Portage County Sheriff's Department also testified. Deputy Wilson was the first law enforcement officer to encounter the victim after the incident. The deputy testified that the victim did not appear to be under the influence of alcohol or drugs. According to the deputy, the victim's account mirrored the victim's trial testimony. Further, Deputy Wilson testified that scissors were found near the side of the road where the victim had said she discarded scissors after she jumped from the car.
 {¶ 14} Detective Richard Shaefer of the Canton Police Department also testified at trial. Detective Shaefer testified to the following. Pursuant to the license plate number provided by the victim, the Canton Police Department developed appellant as a suspect. Subsequently, appellant gave a statement to Detective Shaefer. Detective Shaefer read a transcript of the statement to the jury. According to the statement, appellant was driving and observed the victim walking down the street. They made eye contact. Appellant pulled over and the victim asked appellant what he was up to. Appellant replied that he was just out and about and the victim asked for a ride. Appellant told Detective Shaefer that the victim said she would pay him "a couple thousand dollars" to give her a ride. According to appellant's statement, the victim got into his car and asked him to take her to her cousin's house which was a few blocks away to drop off a red santa hat. According to appellant's statement, when they got to the house, the victim asked him to wait and said she would be right back.
 {¶ 15} According to appellant, the victim got back into the car and asked appellant whether he smoked weed, to which he replied "no." Appellant stated that he believed the victim to be "of age" based upon her appearance. Appellant claimed that after he told her he did not smoke weed, the victim asked whether he drank and if so, would he get them some beer. Thus, the two stopped at the beverage store and appellant went in and bought beer. According to appellant's statement, before he gave her any beer, he asked whether she was old enough to drink and appellant replied "yes." According to appellant's account, the victim then asked for cigarettes. Appellant replied that he did not have any but could get some. Thus, they stopped at appellant's mother's house and appellant went in and came back with several cigarettes.
 {¶ 16} In his statement, appellant claimed that the victim also asked appellant to buy her something to eat. Appellant stated that he did not have any money. Appellant claimed that the victim offered to show him her breasts if he would buy her something to eat. Appellant claimed that after the victim volunteered to show him her breasts, they started having a conflict about "it." Transcript of Proceedings, Vol. II, pg. 186. After that, the victim said she would walk.
 {¶ 17} According to Detective Shaefer, at this point in the statement, he confronted appellant with the victim's story about forcing her into the car, threatening her and fondling her breasts. Appellant insisted that the story was not true. Appellant claimed that the victim volunteered to get into his car and "kick it" with him. Transcript of Proceedings, Vol. II, pg. 185. Appellant speculated that the victim was making up the story because she was out too late. Transcript of Proceedings, Vol. II, pg. 186.
 {¶ 18} Upon deliberation, the jury returned a verdict of guilty. On March 26, 2004, appellant's trial counsel filed a motion for a new trial, arrest of judgment, or modification of the verdict, pursuant to Crim. R. 33 and 34. This motion was overruled by the trial court. Subsequently, appellant was sentenced to one year in prison.
 {¶ 19} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 20} "I. The jury's verdict was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 21} "II. The trial court erred in denying a mistrial when a Police officer testifying for the state disobeyed the court's order concerning the mention of a dismissed criminal charge brought against the defendant."
 I {¶ 22} In the first assignment of error, appellant contends that the verdict was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.
 {¶ 23} The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
 {¶ 24} "Our standard of review on the issue of sufficiency of the evidence was established in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, in which the Court held as follows: "The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. . . ." Jenks, at paragraph 2 of the syllabus.
 {¶ 25} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. However, the appellate court must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
 {¶ 26} Appellant was convicted on one count of abduction. This offense, as charged, is defined as follows: "No person, without privilege to do so, shall knowingly . . . [b]y force or threat, remove another from the place where the other person is found. . . ." R.C. 2905.02(A)(1). In addition to having to prove all of the elements of the offense, appellant points out that venue must be proven. Appellant argues that to prove venue, at least one element of the offense must be committed in the county of prosecution, in this case, Stark County. (See R.C. 2901.12(A)).
 {¶ 27} First, appellant contends that the victim's story is too incredible to believe. Second, appellant argues that in and of itself, the victim's story is insufficient to prove the crime of abduction. Specifically, appellant argues that a reasonable jury could have concluded that "a promiscuous teenager lied her way into a ride to Kent State with an older man, then got cold feet and wanted out of the car" but such a scenario is insufficient to constitute criminal conduct by appellant. Third, appellant argues that even if there were criminal conduct, the criminal conduct occurred in Portage County.
 {¶ 28} However, as stated above, credibility is generally a matter for the trier fact. A jury is free to assess a witness' credibility and accept or reject any or all of a witness' testimony. Apparently, the jury found the victim credible. The victim testified that she was forced into a car while in Stark County and driven around the area against her will. Further, testimony supports the victim's statement in that, at least by the time they were driving in Portage County, the victim was afraid enough to jump from a moving vehicle and go to a stranger's house seeking aid. The fact that scissors were found near Young's house substantiated the victim's testimony that she was scared and secreted the scissors in case she needed them to defend herself. Young's description of the victim's state when she found the victim on her doorstep further supports the victim's account of the incident. Admittedly, appellant presented a different account of the events. However, the jury apparently found appellant's account that she was forced into a car in Stark County and then driven around the area against her will to be credible and appellant's account to be not credible.
 {¶ 29} We find that when the testimony presented at trial is considered in a light most favorable to the prosecution, a rational jury could have found that the essential elements of the crime as well as venue were proven beyond a reasonable doubt. Further, we find that the jury did not clearly lose its way and create a manifest miscarriage of justice.
 {¶ 30} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 31} In the second assignment of error, appellant contends that the trial court erred in denying a mistrial when a police officer mentioned a warrant for a criminal charge (domestic violence), brought against appellant but for which appellant was not indicted, despite an order to preclude such evidence. Appellant asserts that this was especially damaging because he could not testify concerning the incident without his prior convictions being disclosed to the jury thereby causing further damage. We disagree.
 {¶ 32} Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible. State v. Franklin
(1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173, 182,510 N.E.2d 343. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Rivera (1994),99 Ohio App.3d 325, 328, 650 N.E.2d 906.
 {¶ 33} In this case, appellant filed a motion in limine to preclude evidence concerning his prior criminal record and any active warrant pending against appellant at the time of the incident. Appellant had an active warrant concerning a domestic violence charge. In the motion, appellant requested that the prosecutor be ordered to "instruct her officers and other witnesses to not testify regarding this evidence." At the beginning of the trial, the trial court asked the state if it intended to enter any such evidence. When the prosecutor indicated that the state did not intend to enter such evidence, the trial court granted the motion in limine.
 {¶ 34} Subsequently, Detective Schaefer testified as follows:
 {¶ 35} "Q. Were you assigned a case to investigate regarding suspect [sic] at that time, now Defendant, Desmond Holmes?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. And how did you go about that investigation? . . .
 {¶ 38} "A. . . . got a report from Portage County from a Sheriff's Deputy and the report that the shift guys took that this girl had been picked up, basically kidnapped, taken in a car and dumped in Portage County.
 {¶ 39} "They had a license number BX 33XX and I ran the plate, and it come back to 1721 Walden, N.W., a Michelle Holmes.
 {¶ 40} "Q. Who was Michelle Holmes?
 {¶ 41} "A. Mother of Desmond.
 {¶ 42} "Q. And with that information what did you do with it?
 {¶ 43} "A. Went up in the area to try to find the car. Went to the house and knocked on the door. . . .
 {¶ 44} "[Mrs. Homes] finally came to the door, and I asked her who was using her car. Took about twenty minutes to get her to tell me that her son had the car, Desmond Holmes . . .
 {¶ 45} "I came back with the information she gave me, and I ran his driver's license, and it came back to Desmond A. Holmes, had a warrant for domestic violence." Transcript of Proceedings, Vol. II, pgs. 164-165.
 {¶ 46} As soon as the detective mentioned the warrant for domestic violence, appellant's defense counsel objected. The objection was sustained by the trial court. The trial court instructed the jury to "disregard." Id. at 166. A conference was then held at the bench in which defense counsel moved for a mistrial. Defense counsel argued that this evidence "was specifically in a motion in limine including the Prosecutor to tell her witnesses, and that is a charge that isn't even brought in if my client testifies. He was no billed on that charge." Id. The trial court overruled the motion and the trial proceeded. At the close of the evidence, the trial court gave the following limiting instruction in which the court reiterated that there was no evidence that there was a domestic violence conviction or anything of substance regarding any domestic violence charge:
 {¶ 47} ". . . wanted to clear up something to make sure that it doesn't enter into your deliberations.
 {¶ 48} "There was some testimony from an officer with regard to a domestic violence warrant. At the time I sustained an objection and asked you to disregard that.
 {¶ 49} "Oftentimes it is asking a lot of a jury to wipe something out of their minds, to disregard something that they have heard.
 {¶ 50} "Nevertheless I did instruct you that; and I want to reiterate that and go one step further and indicate to you that there is no evidence that there was ever any conviction or anything of substance that occurred relative to the domestic violence.
 {¶ 51} "So it should not enter into your thought process and deliberations whatsoever. I want you to put that issue totally out of this case." Tr. at Vol. II, pg. 211.
 {¶ 52} A curative instruction is an appropriate remedy, rather than a mistrial, for inadvertent answers given by a witness to an otherwise innocent question. State v. Mobley, Montgomery App. No. 18878, 2002-Ohio-1792; State v. Maddox (June 29, 2001), Montgomery App. No. 18389, 2001 WL 726778. Further, a jury is presumed to follow curative instructions given by the trial court and therefore a trial court sustaining an objection and giving a curative instruction has been held to be enough to cure the taint from an improper statement. State v.Garner (1995), 74 Ohio St.3d 49, 59, 656 N.E.2d 623; State v. Loza
(1994), 71 Ohio St.3d 61, 641 N.E.2d 1082.
 {¶ 53} Upon review, we find that the trial court did not abuse its discretion. The testimony was elicited by an innocent question and came out in the context of how the detective investigated the offense. An objection was sustained immediately and the jury was instructed to disregard the comment. Further, the trial court gave the jury a curative instruction at the close of the evidence. In essence, we are not convinced that the answer the detective gave to the prosecutor's "background" question was so prejudicial that the trial court abused its discretion when it denied appellant's motion for a mistrial.
 {¶ 54} Accordingly, appellant's second assignment of error is overruled.
 {¶ 55} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Farmer, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.